```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/26/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID ULRICH,

                Plaintiff,

-against-

JOHN O'KEEFE,

                Defendant.

23-cv-686 (MKV)

OPINON & ORDER
DENYING
MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

David Ulrich brings this action against his former business partner John O'Keefe seeking damages for a breach of fiduciary duty. Ulrich alleges that, based on their past course of dealings together, he reasonably trusted O'Keefe to negotiate the sale of their company in both of their best interests. However, O'Keefe allegedly negotiated a superior severance package for himself while leaving Ulrich surprised about both his termination and inferior severance package. O'Keefe moves to dismiss. For the reasons set forth below, motion is DENIED.

## I.    BACKGROUND[1]

### A. Facts

Plaintiff David Ulrich alleges that he worked closely with Defendant John O'Keefe in a Delaware business, ITelagen LLC ("ITelagen"), and its predecessor company, for a number of years. FAC ¶ 11. ITelagen was "a Delaware limited liability company." Redemption Agreement at 1. In 2018, Ulrich was Executive Vice President and Chief Operations Officer, and O'Keefe was Chief Executive Officer of ITelagen. FAC ¶ 1; *see* FAC ¶¶ 9, 10. Ulrich owned a significant

---

[1] The facts are taken from Ulrich's operative pleading, "the Complaint" [ECF No. 14 ("FAC")], and, for purposes of this motion, the Court accepts the allegations in the Complaint as true and draws all reasonable inferences in Ulrich's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court also relies on the Redemption Agreement [ECF Nos. 14-1, 14-2], which is attached to the Complaint. *See Kleinman v. Elan Corp., plc*, 706 F.3d 145, 147 (2d Cir. 2013).

share of ITelagen and helped fund its early development.  *See* FAC ¶¶ 9, 12; *see also* Redemption Agreement, Schedule A.

During this time, the Complaint alleges, Ulrich and O'Keefe "were partners."  FAC ¶ 11.  O'Keefe allegedly "referred to" Ulrich "as his partner in social and professional settings."  FAC ¶ 11.  O'Keefe "routinely" referred to "start[ing] the company" with Ulrich.  FAC ¶ 11.  "The two jointly made major decisions involving the company."  FAC ¶ 11.

Ulrich and O'Keefe decided to find a new principal investor.  *See* FAC ¶ 16.  Eventually, the "private equity company Sheridan" acquired ITelagen.  FAC ¶ 1.  In connection with the Sheridan acquisition, the members of ITelagen, including Ulrich and O'Keefe, sold their ownership interests to Acquiescent Holdings, LLC ("Acquiescent"), a Delaware company that was created to facilitate the Sheridan acquisition.  *See* FAC ¶¶ 24, 25; *see also* Redemption Agreement.  In the Redemption Agreement, the sellers (the members of ITelagen) released all claims against Acquiescent and "its managers, officers and members . . . arising out of" that sale and the Redemption Agreement.  Redemption Agreement § 4(c).  Sheridan then acquired Acquiescent, which no longer exists.  FAC ¶ 29.

Crucially, Ulrich alleges that throughout the negotiations for Sheridan to acquire ITelagen, during which time Ulrich and O'Keefe "were partners" in ITelagen, FAC ¶ 11, "Ulrich relied upon and trusted Mr. O'Keefe to protect the interests of ITelagen as well as [Ulrich's] interests," FAC ¶ 23.  Ulrich's trust that O'Keefe would act in his best interest "was based upon Mr. O'Keefe's prior conduct."  FAC ¶ 23.  Ulrich alleges that "[t]hroughout their association, Mr. O'Keefe had

played the role of negotiator," while "Ulrich had focused on operational needs." FAC ¶ 33. Ulrich "believed" that O'Keefe had "look[ed] after [Ulrich's] interests . . . in the past." FAC ¶ 33.

To Ulrich's surprise, "[t]wo weeks after the closing," in April 2021, Sheridan terminated both O'Keefe as CEO and Ulrich as Executive Vice President and Chief Operating Officer. FAC ¶ 36. Sheridan allegedly gave O'Keefe a much more generous severance package than it offered to Ulrich. *See* FAC ¶¶ 36, 39, 40. Ulrich alleges that O'Keefe negotiated his severance package as "a condition" of the sale of ITelagen to Sheridan. FAC ¶ 34. He further alleges that O'Keefe did not "seek to obtain a similar severance arrangement for Mr. Ulrich." FAC ¶ 35.

## B. Procedural History

Ulrich initially commenced an action against O'Keefe in January 2022, and the case was assigned to another judge in this District. *See Ulrich v. O'Keefe*, No. 22-cv-170 (PKC) at ECF No. 1. However, Ulrich voluntarily dismissed the case "without prejudice." *Id.* at ECF No. 15. One year later, Ulrich attempted to file a complaint against O'Keefe, but the Clerk's Office issued a deficiency notice, and the Chief Judge administratively closed the case with instructions that it could be "reopen[ed] and randomly reassign[ed]" within 60 days. *Ulrich v. O'Keefe*, 2023 23-cv-320 (LTS) at ECF No. 5.

The next day, Ulrich commenced this action with another deficient complaint [ECF No. 1]. Thereafter, he properly filed his original complaint [ECF No. 6]. O'Keefe responded with a pre-motion letter seeking leave to file a motion to dismiss [ECF No. 9]. The Court issued an order granting O'Keefe leave to file a motion to dismiss and granting Ulrich leave to amend in advance of any such motion [ECF No. 10].

Ulrich filed an amended complaint, which is his operative pleading and which the Court refers to as the "Complaint" [ECF No. 14 ("FAC")]. He attached the Redemption Agreement

[ECF Nos. 14-1, 14-2]. Thereafter, O'Keefe filed a motion to dismiss for failure to state a claim or, in the alternative, "for dismissal pursuant to Fed. R. Civ. P. 12(b)(3) upon grounds of *forum non conveniens*" [ECF Nos. 15, 16 ("Def. Mem."), 17].[2] Ulrich filed an opposition brief [ECF No. 18 ("Opp.")]. O'Keefe filed a reply brief [ECF No. 19].

## II.   LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion to dismiss, the plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept as true all factual allegations in the complaint and must draw all inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

## III.   ANALYSIS

Ulrich's Complaint is inartful, and his brief in opposition to the motion to dismiss is not very helpful. In particular, throughout his brief, Ulrich invokes New York law, even though the source of O'Keefe's alleged fiduciary duty to Ulrich was their shared Delaware business. *See* Opp. at 4; Redemption Agreement at 1 (ITelagen was a Delaware company). Moreover, although Ulrich's claim rests on allegations that O'Keefe betrayed him during a specific time period, Ulrich notes in his brief that two key allegations in his Complaint reflect the wrong year. Opp. at 3 n.2. To make matters worse, the correction is also the wrong year. *See* Opp. at 3 n.2. Nevertheless, drawing all reasonable inferences in his favor, *see Littlejohn*, 795 F.3d at 306, Ulrich states a claim for breach of fiduciary duty under Delaware law.

---

[2] As explained below, Rule 12(b)(3) concerns improper venue, which is different from *forum non conveniens*, and O'Keefe does not argue that venue is not proper.

**A. Ulrich States a Claim for Breach of Fiduciary Duty.**

To allege a breach of a fiduciary duty, a plaintiff must allege that the defendant owed him a fiduciary duty and that the defendant breached that duty. *See Est. of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011). "Under Delaware law, '[a] fiduciary relationship is a situation where one person reposes special trust in and reliance on the judgment of another or where a special duty exists on the part of one person to protect the interests of another.'" *Auriga Cap. Corp. v. Gatz Properties*, 40 A.3d 839, 850 (Del. Ch. 2012), *judgment entered sub nom. Auriga Cap. Corp. v. Gatz Properties, LLC* (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012). In general, "managers of a Delaware limited liability company owe traditional fiduciary duties of loyalty and care to the members of the LLC." *William Penn P'ship v. Saliba*, 13 A.3d 749, 756 (Del. 2011).

Moreover, under Delaware law, joint venturers owe fiduciary duties to "each other with respect to the enterprise." *In re Mobilactive Media, LLC*, 2013 WL 297950, at *20–21 (Del. Ch. Jan. 25, 2013) (quoting *J. Leo Johnson, Inc. v. Carmer*, 38 Del. Ch. 579, 584, 156 A.2d 499, 502 (1959)). This means "that, with respect to the property subject to the duty, a fiduciary always must act in a good faith effort to advance the interests of his beneficiary." *Id*. (quoting *Dweck v. Nasser*, 2012 WL 161590, at *12 (Del. Ch. Jan. 18, 2012)). Delaware law "forbids one joint adventurer from acquiring solely for himself any profit or secret advantage in connection with the common enterprise." *Id.* (quoting *J. Leo Johnson, Inc.*, 38 Del. Ch. at 584).

Based on the allegations in the Complaint, which the Court accepts as true for purposes of this motion, *see Littlejohn*, 795 F.3d at 306, O'Keefe owed Ulrich fiduciary duties in connection with the operation and sale of ITelagen. Ulrich alleges that he placed his trust in O'Keefe to protect his interests because of their past relationship working together at ITelagen. *See* FAC ¶¶ 23, 33; *see also Auriga Cap. Corp.*, 40 A.3d at 850. As CEO, O'Keefe was a manager of the LLC. *See*

5

FAC ¶¶ 1, 25. Ulrich was a member. *See* FAC ¶¶ 1, 25; *see also* Def. Mem. at 2 (referring to Ulrich as a member of ITelagen). Thus, in connection with their roles at ITelegan, O'Keefe owed Ulrich the "traditional fiduciary duties of loyalty and care." *William Penn P'ship*, 13 A.3d at 756.

Moreover, Ulrich alleges he and O'Keefe were joint venturers in ITelagen. *See* FAC ¶¶ 9, 11, 12, 33. In Delaware, a "joint adventure" is an "enterprise undertaken . . . jointly," which is not strictly "a partnership," in which the parties invest their "money" and "skill" for their "mutual benefit." *J. Leo Johnson, Inc.*, 38 Del. Ch. at 584. ITelagen was not a partnership, but Ulrich alleges that O'Keefe "referred to" Ulrich "as his partner" and referred to "start[ing] the company" with Ulrich. FAC ¶ 11. Ulrich further alleges that he owned a significant share of ITelagen and helped fund its early development. *See* FAC ¶¶ 9, 12. Furthermore, Ulrich alleges that O'Keefe exercised his skill as a negotiator, while Ulrich "focused on operational needs," to advance the interests of both ITelagen and each other. FAC ¶ 33. Thus, as joint venturers, O'Keefe and Ulrich owed each other fiduciary duties, and, therefore, O'Keefe could not "acquir[e] solely for himself any profit or secret advantage in connection with" the disposition of ITelagen. *J. Leo Johnson, Inc.*, 38 Del. Ch. at 584.

O'Keefe does not appear to disagree that he owed Ulrich fiduciary duties when O'Keefe was the CEO of ITelagen. Rather, O'Keefe argues that their fiduciary relationship ended when they sold the company. O'Keefe contends that Ulrich's claim arises out of "his unhappiness with third party Sheridan's decision to terminate" Ulrich on unfavorable terms and that O'Keefe and Ulrich "were nothing more than co-workers" when Sheridan made this decision. Def. Mem. at 6, 7. As such, O'Keefe contends that he and Ulrich were no longer in a fiduciary relationship when any alleged breach occurred. *See* Def. Mem. at 6–7.

O'Keefe misunderstands or misstates the claim. Ulrich alleges that O'Keefe negotiated his own, favorable severance package as "a condition" of the sale of ITelagen to Sheridan and failed to do the same for Ulrich. FAC ¶¶ 34, 35. In other words, Ulrich alleges that O'Keefe breached his fiduciary duty to Ulrich while the two still "were partners" at ITelagen, FAC ¶ 11, and Ulrich was trusting O'Keefe to negotiate in his best interest, FAC ¶ 33, before the "final closing of the deal" for Sheridan to acquire ITelagen, FAC ¶ 34. Accepting these allegations as true, as the Court must, *see Littlejohn*, 795 F.3d at 306, Ulrich states a claim that O'Keefe breached his duties of loyalty and care to Ulrich, and dismissal is not appropriate.

### B. The Redemption Agreement.

O'Keefe argues that Ulrich released any claim for breach of fiduciary duty against O'Keefe when Ulrich signed the Redemption Agreement. Def. Mem. at 8. The Redemption Agreement contains a release by the sellers of ITelagen against Acquiescent and "its managers" of claims "arising out of" that sale and agreement. Redemption Agreement § 4(c). To be sure, it is a broadly-worded release, O'Keefe was a manager of Acquiescent, and Acquiescent was created to facilitate the sale of ITelagen to Sheridan. However, Ulrich's claim does not arise out of the sale of ITelagen to Acquiescent. Ulrich's claim arises out of O'Keefe's alleged course of negotiations to sell ITelagen to Sheridan. *See* FAC ¶¶ 34, 35.

Ulrich does not specifically allege in his Complaint the date on which O'Keefe negotiated his severance package. Perhaps discovery will reveal that the Redemption Agreement remains pertinent. However, its release of claims does not unambiguously preclude Ulrich's claim against O'Keefe. *See Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982). Accordingly, the Redemption Agreement does not provide a basis to dismiss this case at the pleading stage.

7

**C. Venue**

Finally, O'Keefe argues that this case should be dismissed "pursuant to Fed. R. Civ. P. 12(b)(3) upon grounds of *forum non conveniens*." Def. Mem. at 1; *see id.* at 9. This argument is exclusively based on the parties' supposed "choice of forum" in the Redemption Agreement. Def. Mem. at 8–9. The relevant provision states that "each party" to the Redemption Agreement "consents to the jurisdiction of the courts of the State of Delaware and of the United States Federal courts sitting in the State of Delaware" for "litigation or disputes that may arise out of or in connection with this Agreement, its construction, effect, interpretation, performance or non-performance . . . ." Redemption Agreement § 4(e).

As an initial matter, a forum-selection clause is enforced by a motion to transfer pursuant to 28 U.S.C. § 1404(a), not a motion to dismiss. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). A court may also transfer claims "[f]or the convenience of the parties and witnesses, in the interest of justice" (*i.e.* pursuant to the doctrine of *forum non conveniens*) in the absence of a forum selection clause. 28 U.S.C. § 1404(a). To seek dismissal pursuant to Rule 12(b)(3), however, the movant must show that venue is not proper. *See* Fed. R. Civ. P. 12(b)(3); *Atl. Marine Const. Co.*, 571 U.S. at 55.

Section 4(e) of the Redemption Agreement does not require transfer, let alone dismissal. By its plain language, the provision states only that the parties to the Redemption Agreement consent to the jurisdiction of courts in Delaware. A "permissive consent-to-jurisdiction provision" is "not a mandatory and exclusive forum selection clause." *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 979 (2d Cir. 1993). Moreover, the provision applies to litigation arising out of the Redemption Agreement, which this case does not. Thus, O'Keefe has not offered a reason to conclude that venue is improper and to dismiss pursuant to Rule 12(b)(3).

## IV. CONCLUSION

For the reasons set forth above, O'Keefe's motion to dismiss is DENIED. The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 15.

**SO ORDERED.**

**Date: March 26, 2024**  
      **New York, NY**

**MARY KAY VYSKOCIL**  
**United States District Judge**