USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/11/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID ULRICH,

Plaintiff,

-against-

JOHN O'KEEFE,

Defendant.

23-cv-686 (MKV)

OPINION AND ORDER DENYING MOTION TO AMEND JUDGMENT

MARY KAY VYSKOCIL, United States District Judge:

The Court held a bench trial in this matter on David Ulrich's claim against John O'Keefe for breach of fiduciary duty and O'Keefe's counterclaim against Ulrich for breach of the release of claims provision of a contract. The Court ruled that O'Keefe had prevailed in his defense but failed to prove his counterclaim. O'Keefe now moves, pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedures and Local Civil Rule 6.3, to amend the Court's ruling to award judgment in his favor on his counterclaim [ECF Nos. 90, 91, 97]. For the reasons set forth below, O'Keefe's motion is DENIED.

## I. BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case, which are set forth in detail in the Court's Findings of Fact and Conclusions of Law after the Bench Trial of the Claim and Counterclaim asserted in this action [ECF No. 88 ("Findings and Conclusions"); *see* ECF No. 85-1 ("Tr.")]. As such, the Court summarizes the facts and procedural history only as necessary to resolve O'Keefe's pending motion to amend in part the Clerk's Judgment reflecting the Court's Findings and Conclusions [ECF Nos. 89 ("Judgment"), 90 ("Mot."), 91 ("Mem."), 96 ("Opp."), 97 ("Reply")].

David Ulrich initiated this case against his former colleague John O'Keefe, asserting a claim for breach of fiduciary duty in connection with the respective severance offers the parties received when they were both terminated as employees of Sheridan Capital Partners ("Sheridan") [ECF Nos. 1, 6, 14 ("FAC")]. Ulrich alleged that he and O'Keefe "were partners" in their former business, ITelagen LLC ("ITelagen"), which, after a series of corporate changes, was ultimately sold to Sheridan on March 26, 2021. FAC ¶¶ 11, 24. To facilitate the ultimate sale to Sheridan, Ulrich and O'Keefe sold their interests in ITelagen to Acquiescent Holdings, LLC ("Acquiescent") pursuant to a Redemption Agreement [ECF Nos. 14-1, 14-2 (collectively, the "Redemption Agreement")]. *See* FAC ¶ 25. The Redemption Agreement contained a release of "all claims which the Releasors ever had, now has [sic] or may have in the future arising out of any matter, thing or event occurring up to and including the [March 26, 2021] date of Closing, except those with respect to fraud by [Acquiescent] in any of its tax returns or arising under this Agreement." Redemption Agreement § 4(c).

Shortly after the sale, on April 7, 2021, Sheridan terminated O'Keefe on more favorable terms than it had offered to Ulrich. *See* FAC ¶¶ 36, 39, 40; Findings and Conclusions at 10; Tr. at 39:9–16. In his pleading, Ulrich alleged that O'Keefe, who had "look[ed] after [Ulrich's] interests" in connection with business transactions "in the past," had breached a fiduciary duty "by negotiating a favorable separation arrangement for himself while making little or no effort to ensure an adequate separation agreement for Mr. Ulrich." FAC ¶¶ 33, 52. Ulrich specifically alleged in his pleading that "[a]fter the March 26, [2021] closing," Ulrich "learned" that "Sheridan had required Mr. O'Keefe to agree to a severance package as a *condition* for final closing of the deal," *id.* ¶ 34 (emphasis added), suggesting that the negotiations had taken place before the sale. However, Ulrich also expressly alleged in his pleading that "discussions" of "the details of Mr.

O'Keefe's and Mr. Ulrich's dismissal took place" after April 7, 2021. *Id.* ¶ 37. Ulrich sought from O'Keefe damages reflecting the amount of severance that Ulrich believed he should have been offered by Sheridan. *See id.* ¶ 55.

O'Keefe moved to dismiss the Complaint, arguing that Ulrich had failed to state a claim for breach of fiduciary duty because the parties were mere "co-employees," and therefore not in a fiduciary relationship, when they were both unexpectedly terminated by Sheridan [ECF Nos. 15, 16 ("MTD") at 1, 17, 19]. *See* MTD at 6, 7 ("[f]ollowing the Redemption Agreement, Plaintiff and Defendant were nothing more than coworkers"). O'Keefe further argued that, insofar as Ulrich alleged that O'Keefe had betrayed him prior to the sale, any claim Ulrich might have had against O'Keefe was barred by the release of claims in the Redemption Agreement. *Id.* at 8.

The Court denied the motion to dismiss, stressing that, at the pleading stage, the Court was required to accept Ulrich's allegations as true and draw all reasonable inferences in his favor [ECF No. 20 ("Op.") at 1 n.1, 4, 5, 7]. In particular, at that stage, there were open questions as to the nature of the parties' relationship after the sale to Sheridan and the "specific time period" during which O'Keefe allegedly "betrayed" Ulrich. Op. at 4; *see id.* at 5–7. The Court explained that, in part because of questions about the alleged timeline of alleged events in the Amended Complaint, the release of claims in the Redemption Agreement did not "unambiguously preclude" Ulrich's lawsuit. *Id*. at 7.

O'Keefe thereafter filed a counterclaim alleging that Ulrich breached the release of claims by bringing this case [ECF No. 21 ("Ans.")]. O'Keefe sought damages in the form of attorney's fees and costs arising from this litigation. Ans. at 7. The parties conducted discovery [ECF No. 31]. Although the Court twice ordered them to avail themselves of alternative dispute resolution procedures [ECF Nos. 56, 62], they were unable to reach a settlement.

The Court presided over a bench trial. The Court ruled that Ulrich had failed to prove his claim against O'Keefe for breach of fiduciary duty and that O'Keefe had failed to prove his counterclaim against Ulrich for breach of the release of claims. *See* Findings and Conclusions at 20. In particular, the Court ruled that Ulrich had failed to establish that O'Keefe owed him a fiduciary duty because "Ulrich, through his counsel, expressly and repeatedly represented at the trial that 'the relevant time frame' for Ulrich's claim was after 'March 26th [2021], *after* the closing, to April 7th.'" *Id.* at 12 (quoting Tr. at 57:17–18). Ulrich admitted on cross-examination that he "did not, 'in any way, shape, or form, have any kind of partnership interest with John O'Keefe'" during that period. *Id.* (quoting Tr. at 30:20–23). Rather, Ulrich and O'Keefe "were both employees" when O'Keefe purportedly failed to negotiate a severance for Ulrich, which, Ulrich admitted, he never asked O'Keefe to do. *Id.* at 13 (quoting Tr. at 59:12–15), 14. As such, the Court ruled, "Ulrich had failed to prove that O'Keefe owed him a fiduciary duty during the timeframe relevant to his claim." *Id.* at 12. The Court further ruled that, while meritless, Ulrich's claim based on events after the sale to Sheridan did not breach the Redemption Agreement, since "the plain 'language of the [Redemption Agreement]' releases only claims based on events 'up to and including' [the] March 26, 2021" closing of the sale to Sheridan. Findings and Conclusions at 20 (first quoting *Adams v. Jankouskas*, 452 A.2d 148, 156 (Del. 1982), then quoting Redemption Agreement § 4(c)); *see id.* at 19–20.

Now before the Court is O'Keefe's post-trial motion, pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedures and Local Civil Rule 6.3, to amend the Judgment in part [ECF Nos. 90, 91 ("Mem."), 97]. While O'Keefe seeks to preserve the Court's ruling that Ulrich failed to prove his claim, O'Keefe seeks to reverse the Court's ruling that O'Keefe failed to prove his counterclaim. *See* Mem. at 1–2. In short, O'Keefe contends that Ulrich breached the release

of claims provision of the Redemption Agreement by bringing this lawsuit, since Ulrich had alleged "pre-closing" misconduct by O'Keefe in his pleading and throughout the litigation preceding the trial. *Id.* at 1. According to O'Keefe, Ulrich "narrowed" the timeframe of his claim only during the trial, which was "too late." *Id.* O'Keefe further argues that the Court overlooked the full scope of the release of claims, which O'Keefe contends extends to claims arising out of "acts up to the time of closing **or** 'arising under'" the Redemption Agreement. *Id.* at 3 (emphasis in original) (quoting Redemption Agreement § 4(c)).

Ulrich opposes the motion [ECF No. 96 ("Opp.")]. He stresses that reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Opp. at 2 (quoting *Munoz v. Grp. US Mgmt. LLC*, 2024 WL 4416551, at *1 (S.D.N.Y. Oct. 4, 2024)). Ulrich maintains that "there has been no oversight of facts or law by the Court" in this case. *Id.*

## II. LEGAL STANDARD

Rule 52(b) of the Federal Rules of Civil Procedure, in full, provides: "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings--or make additional findings--and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." Fed. R. Civ. P. 52(b). Rule 59(e) states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Local Civil Rule 6.3 provides a shorter deadline for a "motion for reconsideration" not governed by these Federal Rules and procedures for the briefing of motions for reconsideration in this District. Local Civ. R. 6.3.

It is well established that a party must meet extremely "demanding standards" to obtain relief under any of these Rules. *Gonzalez v. United States*, 2021 WL 1606182, at *2 (S.D.N.Y.

Mar. 1, 2021) (internal quotation marks and citation omitted), *aff'd*, 80 F.4th 183 (2d Cir. 2023); *see, e.g.*, *Peterson v. Islamic Republic of Iran*, 2013 WL 2246790, at *1 (S.D.N.Y. May 20, 2013); *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009); *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391–92 (S.D.N.Y. 2000). A party moving pursuant to Rule 52(b) may seek relief only "to correct manifest errors of law or fact, or in some limited situations, to present newly discovered evidence." *Gonzalez*, 2021 WL 1606182, at *1 (ellipses omitted); *see United States v. Loc. 1804-1, Int'l Longshoremen's Ass'n*, 831 F. Supp. 167, 169 (S.D.N.Y. 1993), *aff'd sub nom.*, *United States v. Carson*, 52 F.3d 1173 (2d Cir. 1995). Parties "are not permitted to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *Gonzalez*, 2021 WL 1606182, at *1; *see Loc. 1804-1, Int'l Longshoremen's Ass'n*, 831 F. Supp. at 169. Similarly, under Rule 59(e), "district courts may alter or amend [a] judgment to correct a clear error of law or prevent manifest injustice," but such a "motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) (internal quotation marks and citations omitted). Local Rule 6.3 likewise "is intended to ensure the finality of decisions." *R.F.M.A.S.*, 640 F. Supp. 2d at 509 (quoting *S.E.C. v. Ashbury Capital Partners, L.P.*, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)).

In all events, as both parties expressly acknowledge, reconsideration of the Court's earlier, carefully considered ruling would be an "extraordinary remedy." Mem. at 5 (internal quotation marks and citation omitted); Opp. at 2; *see R.F.M.A.S.*, 640 F. Supp. 2d at 509. "Courts have repeatedly made clear that the availability of '[a] motion for reconsideration is not an invitation to parties to treat the court's [earlier] decision as the opening of a dialogue.'" *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 210 (S.D.N.Y. 2009) (quoting *Patterson v.*

*United States*, 2006 WL 2067036, at *2 (S.D.N.Y. July 26, 2006)). Thus, courts must grant such motions only sparingly "to prevent the practice of a losing party" routinely impelling the district court to produce "duplicative rulings on previously considered issues." *R.F.M.A.S.*, 640 F. Supp. 2d at 509 (internal quotation marks and citations omitted).

## III. DISCUSSION

As the Court previously ruled, O'Keefe is not entitled to judgment on his counterclaim. "Delaware law recognizes the validity of a general release" of claims. *Adams v. Jankouskas*, 452 A.2d 148, 155 (Del. 1982). "A release is a form of contract," and O'Keefe therefore had the burden to prove each element of a claim for breach of contract. *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 462 (Del. 1999). Under Delaware law, the party asserting a contract claim "must demonstrate: first, the existence of the contract . . . ; second, the breach of an obligation imposed by that contract; and third, the resultant damage[s]." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). To determine the scope of the obligations imposed by a release of claims, "the court will attempt to ascertain [the parties'] intent from the overall language of the document." *Id.* at 156.

As an initial matter, O'Keefe is incorrect that the release of claims in the Redemption Agreement bars all claims arising out of not only events "up to and including the date of Closing" of the sale to Sheridan, but also future claims "arising under" the Redemption Agreement. Mem. at 2–3 (quoting Redemption Agreement § 4(c)). O'Keefe mischaracterizes the language of the release when he asserts that it "covered all acts up to the time of closing **or** 'arising under this Agreement.'" *Id.* at 3 (quoting Redemption Agreement § 4(c)). The relevant provision, in full, states:

> Release. Subject to the occurrence of Closing hereunder, each Seller, for himself and anyone claiming by, under or through him (collectively, the "Releasors"), shall

> and hereby does generally waive, release, remise and forever discharge the Company, its managers, officers and members from and against all claims which the Releasors ever had, now has or may have in the future arising out any matter, thing or event occurring up to and including the date of Closing, except those with respect to fraud by the Company in any of its tax returns or arising under this Agreement.

Redemption Agreement § 4(c). In other words, it releases "all claims . . . arising out of" events "up to and including" the March 26, 2021 Closing, "***except*** *those with respect to [tax] fraud . . . or arising under this Agreement*." Redemption Agreement § 4(c) (emphases added).

The language about claims "arising under" this Redemption Agreement appears in a clause about *exceptions* to the release of claims. In other words, based on the plain "language of the document," the release of claims provision of the Redemption Agreement does not bar claims for breach of the Redemption Agreement. *Adams*, 452 A.2d at 155. Insofar as O'Keefe contends that the Redemption Agreement was intended to release claims arising out of the events up to the Closing *and* claims arising under the Redemption Agreement, the Court is not free to "rescue" parties from such "drafting errors." *Lamie v. U.S. Tr.*, 540 U.S. 526, 542 (2004).

In any event, O'Keefe's contention that the release of claims bars claims arising under the Redemption Agreement is beside the point. Ulrich's unsuccessful claim did not arise under the Redemption Agreement. He asserted a claim for breach of an alleged fiduciary duty, which Ulrich contended that O'Keefe owed to him based on their long-term "relationship," during which Ulrich had, in the past, "relied upon Mr. O'Keefe to protect his interests." Findings and Conclusions at 14 (quoting Tr. at 59:19–24). As such, it makes no difference whether Ulrich had released claims for breach of the Redemption Agreement.

Pertinent here, the Court ruled that Ulrich failed to prove his claim for breach of a fiduciary duty because, the Court found, Ulrich "fell far short of proving that he had a legally cognizable 'expectation . . . of special trust' in O'Keefe" such that O'Keefe had an obligation to negotiate a

favorable severance package for Ulrich when they were both merely employees of Sheridan (and Ulrich had not asked O'Keefe to negotiate Ulrich's severance). Findings and Conclusions at 14 (emphasis omitted) (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 605 (Del. Ch. 1987)); *see id.* at 12–16. The Court went on to rule that, while meritless, such claim was not barred by the Redemption Agreement, which released only claims "arising out of" events "up to and including" the March 26, 2021 "Closing" of the sale to Sheridan. Redemption Agreement § 4(c); *see* Findings and Conclusions at 19–20.

O'Keefe does not seek to disturb the Court's findings with respect to Ulrich's unsuccessful fiduciary duty claim. *See* Mem. at 1. On the contrary, O'Keefe himself has argued from the very outset of this case that Ulrich could not state a claim for breach of fiduciary duty because O'Keefe's alleged failure to negotiate a favorable severance package for Ulrich occurred, after the Closing, when the parties were mere "co-employees" of Sheridan, and, thus, were not in a fiduciary relationship. MTD at 1, 6, 7. The Court was constrained to deny O'Keefe's motion to dismiss, in light of the applicable standard of review, because Ulrich's pleading was opaque as to the "specific time period" during which O'Keefe allegedly "betrayed" Ulrich and the nature of the parties' relationship at that time. Op. at 4; *see id.* at 5–7.[1] Thereafter, at trial, defense counsel moved "to dismiss [sic] the plaintiff's case-in-chief" expressly on the ground that the relevant period for Ulrich's claim was, after the Closing, immediately before the parties' "April of 2021" termination, when "Mr. O'Keefe and Mr. Ulrich were [both] employees." Tr. at 55:8–56:25. The Court agreed with the defense and entered judgment on Ulrich's claim in favor of O'Keefe, citing the "multiple"

[1] In denying the motion to dismiss, the Court expressly noted that Ulrich's pleading was "inartful" and contained obvious typographical errors in "key allegations" about the timeline of events but that the Court was "[n]evertheless" obligated to draw "all reasonable inferences in his favor." Op. at 4 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015)).

representations that "the relevant period for [Ulrich's] claim is the period from March 26th, 2021, through April 7th, 2021." Tr. at 64:17–19; *see id.* 64-66.

Now, however, O'Keefe seeks to escape the logical implication of his own, consistent position. The Redemption Agreement does not bar a claim arising out of events, after the Closing, when "Mr. O'Keefe and Mr. Ulrich were [both] employees." Tr. at 55:8–56:25; *see* Findings and Conclusions at 19–20; Redemption Agreement § 4(c) (releasing claims "arising out of" events "up to and including" the "Closing"). As such, O'Keefe failed to prove that Ulrich's assertion of his unsuccessful fiduciary duty claim was a "breach of an obligation imposed by [the Redemption Agreement]." *VLIW Tech.*, 840 A.2d at 612.

O'Keefe argues, in effect, that Ulrich breached the release of claims because he filed this lawsuit without immediately limiting the timeframe to the period after the Closing. *See* Mem. at 1, 6. To be sure, as the Court has previously noted in its Opinion denying the motion to dismiss, its Findings and Conclusions after the bench trial, and above, Ulrich alleged in his pleading that "[a]fter the March 26, [2021] closing," Ulrich "learned" that "Sheridan had required Mr. O'Keefe to agree to a severance package as a *condition* for final closing of the deal," FAC ¶ 34 (emphasis added), suggesting that the allegedly objectionable severance negotiations had taken place before the sale. That passing allegation, however, is not sufficient for a breach of the release of claims. *See Spotlight Ticket Mgmt. Inc. v. Daigle*, 2025 WL 1295069, at *4 (S.D.N.Y. May 5, 2025). Indeed, even in his pleading, Ulrich included an apparently conflicting allegation that severance negotiations occurred *after* "Mr. O'Keefe's and Mr. Ulrich's dismissal took place" on April 7, 2021. *Id.* ¶ 37. Thus, the Court has repeatedly observed that the pleading was opaque as to the

timeline.[2] The Redemption "Agreement did not release *allegations*, but *claims*." *Id.* (emphases added). After a bench trial, the Court expressly found that "the relevant time frame" for Ulrich's claim was after the Closing. Findings and Conclusions at 12–14. O'Keefe does not challenge that finding, and, as such, the Redemption Agreement did not bar Ulrich's claim.

More to the point, O'Keefe has no basis, at this stage, to relitigate the Court's finding that Ulrich's claim arose out of events after the Closing. *See Gonzalez*, 2021 WL 1606182, at *1l; *Loc. 1804-1, Int'l Longshoremen's Ass'n*, 831 F. Supp. at 169. He has not identified any "manifest errors" or new evidence that warrant disturbing the Court's factual findings. *Gonzalez*, 2021 WL 1606182, at *1. O'Keefe likewise has not identified any "clear error of law" or "manifest injustice" in the Court's ruling that the Redemption Agreement did not bar a claim that, the Court found and all parties agree, arose out of events after the Closing. *4 Pillar*, 933 F.3d at 216.

While a motion for reconsideration is not an occasion to entertain new arguments, the Court notes that, under Delaware law, a "release" of claims is "different" from a "covenant not to sue." *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 535 (Del. Ch. 2023). Here, Ulrich released all *claims* he might have had against O'Keefe for events prior to the Sheridan sale. *See* Redemption Agreement § 4(c). He did not promise not to sue O'Keefe for future claims based on post-Closing events. *See New Enter. Assocs. 14*, 295 A.3d at 535. Ulrich likewise did not promise not to raise any allegations or evidence about pre-Closing events. *Spotlight Ticket Mgmt*, 2025 WL 1295069,

[2] Ulrich also gave conflicting and apparently "incorrect testimony" about the timeline and other issues. Findings and Conclusions at 6; *see id.* at 16. As a result, the Court refused to "credit certain portions of Ulrich's testimony." *Id.* at 7.

at *4. Accordingly, the Court did not err in concluding that O'Keefe failed to carry his burden to prove his counterclaim for breach of the Redemption Agreement.

## IV. CONCLUSION

For the reasons set forth above, as well as the reasons set forth on the record at the bench trial and in the Court's earlier Findings and Conclusions [ECF Nos. 85-1, 88], O'Keefe's motion to amend the judgment [ECF Nos. 90, 91, 97] is DENIED.

The Clerk of Court respectfully is requested to terminate ECF No. 90.

**SO ORDERED.**

Mary Kay Vyskocil

**Date: September 11, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**